# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

**ALISHA JOY GLISSEN**                                                        **PLAINTIFF**

**V.**                                                        **CIVIL ACTION NO.: 1:16-CV-92-RP**

**COMMISSIONER OF SOCIAL SECURITY**                                        **DEFENDANT**

## MEMORANDUM OPINION

Plaintiff Alisha Joy Glissen has applied for judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying her application for disability insurance benefits (DIB) under Title III of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Docket 1. Plaintiff filed an application for benefits on August 10, 2012, alleging disability beginning on July 20, 2012. Docket 7 at 164-65.

The agency administratively denied Plaintiff's claim initially on October 24, 2012 and on reconsideration on December 18, 2012. *Id.* at 111-13, 116-17. Plaintiff then requested an administrative hearing, which Administrative Law Judge (ALJ) Rebecca Sartor held on June 11, 2014. *Id.* at 119-20, 125-27. The ALJ issued an unfavorable decision on August 25, 2014. *Id.* at 39-49. The Appeals Council denied Plaintiff's request for review on April 11, 2016. *Id.* at 1-4. Plaintiff timely filed this appeal from the April 11, 2016 decision, the undersigned held a hearing on January 19, 2017, and it is now ripe for review.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying Final Judgment. Docket 10.

# I.  FACTS

Plaintiff was born on November 25, 1980, and was 33 at the time of the ALJ hearing. Docket 7 at 164. Plaintiff contends she became disabled as a result of lupus and that she additionally suffers from Raynaud's syndrome, hyperthyroidism, rheumatoid arthritis, acid reflux, photosensitive dermatitis, and bad nerves. *Id*. at 62, 64, 68-70, 77-82. Specifically, Plaintiff asserts that she qualifies for disability under either part of the Listing for systemic lupus erythematosus (SLE), Section 14.02. *Id*. at 62.

At the ALJ hearing, Plaintiff provided testimony about each of the following medical conditions from which she claims to suffer: arthritis (*Id*. at 64-67); Raynaud's syndrome (*Id*. at 79); hypothyroidism (*Id*. at 68); anxiety/nervousness (*Id*. at 68-69, 80-81); rash (*Id*. at 70, 76-78); lupus (*Id*. at 62-63, 80-81, 83-84); and acid reflux (*Id*. at 81-82). Plaintiff testified that she experiences knots and swelling in her hands and feet and swelling in her ankles and knees making it difficult to walk and preventing her from bending over or stopping down. *Id*. at 64-67. According to Plaintiff, it is "hard to just function on [her] own." *Id*. at 64. at 64-65. She stated that her hands and feet swell daily; her knees swell three to four times a week; her ankles swell almost daily; she feels nauseous almost every day; and she experiences a "bad" outbreak of these symptoms three to four times a week. *Id*. at 66.

Plaintiff testified that sunlight and heat aggravate her skin causing a burning and itching rash to appear on her arms, with knots on her hands and bumps on the back of her legs and bottom. *Id*. at 70, 76-78. These knots bleed easily and the blood does not clot well. *Id*. at 76. She testified that Reynaud's syndrome causes a loss of sensation and change in color in her hands in cold weather, and further causes numbness and tingling in her hands and wrists. *Id*. at 79. Her hypothyroidism and lupus cause constant fatigue; the lupus continually flares up and Plaintiff's

only reprieve comes with temporary relaxations of the flare. *Id*. at 68, 80, 83. Plaintiff stated that the lupus medication controls her platelet levels but that she still experiences the other symptoms. *Id*. at 84. Plaintiff testified that she experiences acid reflux around eight times a month with each episode lasting around a day-and-a-half during which she experiences nausea and throwing up. *Id* at 81-82.

The ALJ established that Plaintiff had not engaged in substantial gainful activity since July 20, 2012, the alleged onset date. *Id*. at 41. Next, the ALJ found that Plaintiff experienced the severe impairments of systemic lupus erythematosus, Raynaud's disease, thyroid disorder, GERD (gastroesophageal reflux disease), and anxiety, but that Plaintiff's impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (404.1520(d), 404.1525, and 404.1526). *Id*. at 41-43. Specifically, the ALJ discussed how each of Plaintiff's severe impairments do not meet or medically equal the listing criteria for lupus, thyroid disorder, GERD, or anxiety. *Id*. at 41-42.

Considering Plaintiff's severe impairments, ALJ found that Plaintiff's demonstrated abilities were consistent with a Residual Functional Capacity (RFC) to perform sedentary work. *Id*. at 43. The ALJ concluded that Plaintiff could "occasionally climb ramps and stairs; occasionally balance, stoop, crouch, kneel and crawl; [could not] climb ladders, ropes or scaffolds; and should avoid even moderate exposure to hazards, such as unprotected heights, moving machinery and automotive equipment." *Id*. at 43. The ALJ concluded that Plaintiff "should avoid moderate exposure to temperature extremes, humidity and vibration" and could "occasionally interact with coworkers" but could have "no interaction with the public." *Id*.

Based on a review of the record in conjunction with Plaintiff's allegations, the ALJ concluded that Plaintiff's "allegations are disproportionate to the objective medical evidence."

*Id.* at 46. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* at 44.

The ALJ determined that Plaintiff's residual functional capacity precludes her ability to perform past relevant work, and her ability to perform the full range of sedentary work is impeded by additional limitations. *Id.* at 49. Having questioned the vocational expert (VE) regarding whether jobs existed in the national economy for an individual of the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ noted the VE's testimony that given those factors, Plaintiff could perform the requirements of occupations such as surveillance system monitor, eye glass inserter, and assembler. *Id.* The ALJ ultimately ruled that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 20, 2012, through August 25, 2014, the date of the ALJ's decision. *Id.*

Plaintiff claims that the ALJ failed to properly consider all the record evidence in determining that she did not meet the requirement for Listing 14.02 and that the Appeals Counsel failed to properly consider medical evidence submitted after the hearing date. Docket 13 at 3.

## II. EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, the plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove her impairment is "severe" in that it "significantly limits [her]

---

[1] *See* 20 C.F.R. §§ 404.1520 (2012).
[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).
[3] 20 C.F.R. §§ 404.1520(b) (2012).

physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude

that plaintiff is disabled if she proves that her impairments meet or are medically equivalent to

one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5]

If the plaintiff does not meet this burden, at step four she must prove that she is incapable of

meeting the physical and mental demands of her past relevant work.[6] At step five, the burden

shifts to the Commissioner to prove, considering the plaintiff's residual functional capacity, age,

education and past work experience, that she is capable of performing other work.[7] If the

Commissioner proves other work exists which the plaintiff can perform, plaintiff is given the

chance to prove that she cannot, in fact, perform that work.[8]

### III.  STANDARD OF REVIEW

Judicial review of the Commissioner's final decision to deny benefits is limited to

determining whether the decision is supported by substantial evidence and whether the

Commissioner applied the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir.

1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019,

1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine

whether the ALJ's decision was supported by substantial evidence and whether the proper legal

standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir.

1983). A court has limited power of review and may not reweigh the evidence or substitute its

---

[4] 20 C.F.R. §§ 404.1520(c) (2012).
[5] 20 C.F.R. §§ 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 416.925 (2011).
[6] 20 C.F.R. §§ 404.1520(e) (2012).
[7] 20 C.F.R §§ 404.1520(g)(2010).
[8] *Muse*, 925 F.2d at 789.

judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10]

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson,* 402 U.S. at 390.

## IV.  DISCUSSION

Plaintiff argues that the Commissioner's decision should be reversed on two separate grounds. Docket 13 at 3. First, Plaintiff claims that at step three, the ALJ did not consider all of the medical evidence in the record in determining that Plaintiff did not meet the requirements for Listing 14.02.[11] *Id*. at 5-6. Plaintiff argues that the ALJ's consideration of the listing for lupus "fails to accurately assess the Plaintiff's condition as a whole" and that the ALJ's failure to mention certain office visits amounts to selective reading of the record. *Id*. at 5-6.

At the hearing, Plaintiff argued the ALJ selectively relied on medical records where Plaintiff was doing well, choosing evidence most unfavorable to Plaintiff and ignoring records evidencing the severity of Plaintiff's condition. Plaintiff points to records from treating physician

---

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).
[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).
[11] Listing 14.02 has two parts, (A) and (B); satisfaction of either is sufficient to meet the listing.

Dr. King showing "complaints of joint pan, knots on her feet, and swelling and warmth" and other records reflecting her complaints about pain, puffiness, swelling, and fatigue. Docket 13 at 6. Plaintiff argued that this objective medical evidence satisfies part (A) of Listing 14.02. Plaintiff acknowledged that satisfying part (B) requires a showing of evidence that is more subjective but argued that Plaintiff's testimony about her limited ability to perform the activities of daily living are sufficient to meet part (B).

The Commissioner responds that the ALJ's extensive discussion of the medical evidence, albeit in a separate section of her decision, supports her determination that Plaintiff does not satisfy all of the criteria specified in either part (A) or (B) of Listing 14.02. Docket 14 at 5. At the hearing, the Commissioner argued that Plaintiff's subjective complaints are not supported by objective medical findings, and therefore, cannot support a finding under either part (A) or (B).

In order to establish a finding of disability based on the listings, a plaintiff must establish that she manifests all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). When evaluating whether a listing is met, the ALJ is required to discuss the evidence offered in support of a claim for disability and explain the basis for his or her conclusion as to whether the listing is satisfied. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *see also* 42 U.S.C. § 405(b)(1). "The ALJ is not always required to do an exhaustive point-by-point discussion" regarding step three. *Id*. However, the ALJ is required to identify the relevant listed impairments and compare each of the listed criteria to the evidence of Plaintiff's symptoms in order to ensure that the ALJ's decision is based on substantial evidence. *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir.1986).

At step three the ALJ concluded that "lupus does not meet the criteria of listing 14.02 because examinations show normal gait, fine and gross manipulation, no joint

deformities, and good range of motion of all extremities/joints. Examinations fail to demonstrate any severe fatigue since the claimant is alert and in no acute distress. There is no evidence of fever or weight loss." Docket 7 at 41-42. Then, in section five of her decision, the ALJ discussed extensively the evidence offered in support of Plaintiff's claim and explained the basis for her conclusion that Plaintiff did not satisfy a listing and ultimately, is not disabled. Docket 7 at 43-48.

Considering each of Plaintiff's severe impairments, the ALJ concluded that the "objective medical evidence shows the claimant has normal gait, strength, reflexes, and pulses, no neurological deficits, no significant joint changes, no significant loss of motion, and a non-tender abdomen. [… She] is alert, oriented, cooperative, maintains good eye contact and has clear speech. She generally has a normal mood and affect." *Id*. at 46. Considering Plaintiff's own testimony, the ALJ concluded that her "allegations are disproportionate to the objective medical evidence" and proceeded to identify the many discrepancies between Plaintiff's testimony and the medical record. *Id*. at 46-48.

For example, the ALJ discussed Dr. King's finding that on February 15, 2011, Plaintiff stated she was "doing well" and denied any pain, any redness, warmth or swelling in her joints, and rashes, fevers, chest pain or shortness of breath. *Id*. at 44, 275. Plaintiff was "tolerating medications well and find[ing] them helpful" and functioning well with activities of daily living. *Id*. While Dr. King's June 2011 records document Plaintiff's complaints of "generalized joint pain," "swelling and warmth," and the presence of "some knots on her feet," his physical exam demonstrated Plaintiff's ability to "obtain 100% fist and claw bilaterally with really no active swelling" in her hands. *Id*. at 44, 270, 273. Although Plaintiff's inflammatory arthritis appeared "a bit worse," her

wrists and left elbow appeared "okay" with only trace swelling in her right elbow." *Id*. at 44, 273. Notably, Plaintiff's "shoulders, hips, knees, and ankles [were] without obvious redness, warmth, swelling, or effusion." *Id*.

The ALJ thoroughly discussed Dr. W. Winn Chatham's records dating from August 18, 2011 through November 28, 2012. *Id*. at 44-45. Specifically, on April 19, 2012, Plaintiff reporting doing well "without flares of skin rash, mouth ulcers, or joint swelling." *Id*. at 45, 500. On August 23, 2012, Plaintiff continued to have "complaints of fatigue and some mild joint stiffness/swelling" but was "much improved." *Id*. at 521. The ALJ noted the November 28, 2012 visit during which Plaintiff complained of back pain, neck pain, and joint stiffness, but also acknowledged that Plaintiff had normal range of motion and strength and no tenderness or swelling in her shoulders, elbows, wrists, fingers, hips, knees, and ankles. *Id*. at 45, 516, 518.

The ALJ also discussed Dr. Eddleman's rheumatology consultation on January 20, 2014, during which Plaintiff reported that she experienced some transient fatigue, joint pain, and myalgia, but otherwise was not experiencing any other systemic symptoms and was tolerating her therapy well. *Id*. at 45-46, 635-37. Dr. Eddleman's physical examination demonstrated no significant abnormalities other than Raynaud's, and regarding that condition, Dr. Eddleman instructed Plaintiff to keep hands warm. *Id*.

The ALJ's in-depth discussion of the medical evidence, including the records Plaintiff argues were ignored, satisfies the Court that the ALJ considered all of the evidence and explained her basis for determining that Plaintiff did not satisfy Listing 14.02. Because the ALJ's determination that Plaintiff does not satisfy Listing 14.02 is

supported by substantial evidence, the Court declines to reverse the ALJ's decision on this basis.

Plaintiff's second ground for reversal of the Commissioner's decision is that the Appeals Council failed to properly consider medical evidence submitted after August 25, 2014, the date of the ALJ's decision. Docket 13 at 6-9. In support of this argument, Plaintiff cites records from Anderson Regional Medical Center ("Anderson") dated October 15, 2014 and December 1, 2014. Docket 7 at 9-30. In denying Plaintiff's request for review, the Appeals Council noted that it had considered the additional evidence, but found the information did not provide a basis for changing the ALJ's decision. *Id*. at 2. Specifically, the Appeals Council found that the new information was about a later time that had no bearing on Plaintiff's disability status on or before August 25, 2014. *Id*. The denial of benefits remains supported by substantial evidence here.

Plaintiff asserts that the new and material records from Anderson are pertinent to her disability status prior to the ALJ's decision: they demonstrate that her lupus had deteriorated beyond what ALJ found and contradict the ALJ's RFC conclusion that she was capable of performing a restricted version of sedentary work. At the hearing, Plaintiff argued that the new records were so close in time to the ALJ's decision that they clearly relate back to the period prior to her decision and evidence the increased severity of Plaintiff's symptoms and conditions.

The Commissioner responds, and the Court agrees, that the new records are not "material" because they concern the status of Plaintiff's conditions after the ALJ's decision. Commissioner cites *Castillo v. Barnhart* in support of its contention that evidence of deterioration *after* the date of the ALJ's decision is not relevant. *Castillo v. Barnhart*, 325 F.3d

550, 551-52 (5th Cir. 2003) ("materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied"). Even if the new records had been part of the record before the ALJ, the Commissioner argued that it would not have changed the outcome because the objective examinations did not assign limitations proportionate with Plaintiff's subjective complaints.

When new evidence becomes available after the ALJ's decision and there is a reasonable likelihood that the new evidence could change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Govea v. Astrue*, 2008 WL 2952343, *4 (W.D. Tex. 2008). "New evidence" must meet three criteria: (1) it must be new, and not merely cumulative of what is already in the record; (2) it must be material, *i.e.,* relevant, probative, and likely to change the outcome of the case; and (3) the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). The Fifth Circuit has stated:

> The requirement of materiality is an important one. The concept 'material' suggests that the new evidence must be relevant and probative. However, not every discovery of new evidence, even if relevant and probative, will justify a remand to the Secretary, for some evidence is of limited value and insufficient to justify the administrative costs and delay of a new hearing.

*Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981).

The Appeals Council's ("AC") obligations in evaluating a claimant's request for review are articulated in *Sun v. Colvin*:

> In deciding whether to deny the claimant's request for review, the AC must consider and evaluate any 'new and material evidence' that is submitted, ***if it relates to the period on or before the ALJ's decision***. 20 C.F.R. § 404.970(b). If the AC finds that the ALJ's 'action, findings, or conclusion is contrary to the weight of the evidence currently of record,' the AC will then review the case. *Id.* Otherwise, it will deny the claimant's request for review. The regulations do not require the AC to provide a discussion of the newly submitted evidence or give

reasons for denying review. *See Meyer,* 662 F.3d at 706 ('In sum, the regulatory scheme does not require the Appeals Council to do anything more than what it did in this case, *i.e.,* 'consider new and material evidence ... in deciding whether to grant review.''(citation omitted)); *Mitchell v. Comm'r, Soc. Sec. Admin.,* 771 F.3d 780, 785 (11th Cir.2014) ('[W]e hold that the Appeals Council is not required to explain its rationale when denying a request for review.'); *Martinez v. Barnhart,* 444 F.3d 1201, 1208 (10th Cir.2006) ('[The claimant] points to nothing in the statutes or regulations that would require such an analysis where new evidence is submitted and the Appeals Council denies review.').

*Sun v. Colvin*, 793 F.3d 502, 511–12 (5th Cir. 2015) (emphasis added).

When a claimant properly submits new and material evidence to the Appeals Council, the Court must consider the entire record, including the evidence which the claimant has submitted for the first time to the Appeals Council, even if the Appeals Council denied review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily includes the Appeals Councils' denial of review, but the ALJ's decision remains binding).

The evidence Plaintiff submitted, while new, is not material because it does not relate to the period on or before the ALJ's decision. The Anderson records indicate that on October 15, 2014, Plaintiff presented with intermittent and fluctuating moderate knee and hand pain that was relieved by medication. Docket 7 at 9. Her physical examination revealed a normal gait, full range of motion in all of her joints, and no edema in her extremities. *Id*. at 11. The records acknowledge Plaintiff's long history of lupus as well as her history of Raynaud's and advise Plaintiff only "to keep extremities warm and covered with any cold exposure." *Id*. at 12. The December 1, 2014 records again reflect intermittent and fluctuating moderate joint pain that is aggravated by movement and walking. *Id*. at 14. Despite Plaintiff's complaints of joint pain and swelling, the physical examination reflects normal gait and normal joints without any edema. *Id*. at 15-16. With regard to Plaintiff's lupus, the records state that she was "doing well." *Id*. at 16.

Because the new records contain no evidence relating to Plaintiff's condition before the ALJ's decision, there is no reasonable possibility that the ALJ would have ruled differently if she had these records to review. Considering the entire record, the ALJ's findings are not contrary to the weight of the evidence of record, and the Appeals Council was proper in denying Plaintiff's request for review.

## V.  CONCLUSION

The Court finds that the ALJ's determination that Plaintiff does not satisfy Listing 14.02 is supported by substantial evidence. Upon review of the record evidence as well as the "new" records submitted to the Appeals Council, there is not a reasonable likelihood that the Anderson records would have changed the outcome reached by the ALJ. Because the ALJ's decision is supported by substantial evidence, the Court affirms the Commissioner's decision. A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED,** this the 22nd day of February, 2017.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE